**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC., a Nevada Corporation; and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED LTD., an Australian corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HIGH IMPACT DESIGN & ENTERTAINMENT, a Nevada corporation; WILLIAM RANDAL ADAMS, an individual; RAFAEL ACOSTA, an individual; HIGH IMPACT DESIGN AND ENTERTAINMENT, S.A., a Venezuelan Corporation ,<br><br>Defendants. | 2:07-CV-01033-BES-LRL<br><br>**ORDER** |

Before the Court is Defendant High Impact Design and Entertainment, S.A.'s ("HIDE Venezuela") Motion to Set Aside Default (#19) filed June 23, 2008. Plaintiffs Aristocrat Technologies, Inc. ("ATI") and Aristocrat Technologies Australia ("ATA") (collectively "Plaintiffs") filed their Opposition to Defendant's Motion to Set Aside Default (#20) on July 11, 2008. HIDE Venezuela filed its Reply to Opposition to Motion to Set Aside Default and Dismiss (#21) on July 24, 2008.

After the Motion to Set Aside Default was fully briefed, Plaintiffs filed an Amended Complaint (#24) on August 18, 2008, naming as defendants HIDE Venezuela, High Impact Design & Entertainment of Nevada ("HIDE Nevada"), William Randall Adams ("Adams") and Rafael Acosta ("Acosta") (collectively "Defendants"). Defendant HIDE Venezuela filed a Motion to Dismiss Amended Complaint (#25) on August 22, 2008. Plaintiffs filed their

1

Opposition to HIDE Venezuela's Motion to Dismiss Amended Complaint (#27) on September 9, 2008. HIDE Venezuela filed its Reply to Opposition to Motion to Dismiss Amended Complaint (#28) on September 23, 2008. The Court held a hearing on both of these matters on February 6, 2009.

## I. BACKGROUND

This matter arises out of sale of gaming machines and the allegedly unauthorized registration of the Aristocrat trademark in Venezuela. Plaintiffs are manufacturers, licensors, and worldwide distributors of electronic gaming machines. (Plaintiff's Opp'n (#20) 1). Plaintiffs own trademark rights and registrations in the Aristocrat word mark and the Aristocrat design mark in the United States and other jurisdictions throughout the world. (Am. Compl. (#24) ¶19). On or about December 11, 2000, HIDE Nevada agreed to purchase various electronic gaming machines from ATI. Id. ¶20. Over the course of the next two years, the parties entered into several agreements under which HIDE Nevada agreed to lease and purchase ATI's gaming machines for placement in various locations in Venezuela. Id. ¶¶21-23. The agreements allegedly included provisions stating that ATI retained all rights, title and interest in its trademarks, and HIDE Nevada had no such rights. Id.

On or about June 5, 2003, without Plaintiffs' knowledge or consent, Defendants applied for registration of Aristocrat's design mark and trade name in Venezuela. Id. ¶26. Plaintiffs believe that HIDE Nevada, Acosta, and/or Adams own, control and/or direct HIDE Venezuela. Id. ¶25. Plaintiffs allegedly demanded that HIDE Venezuela withdraw the application, but Acosta explained that HIDE Venezuela would assign the trademark and logo to Plaintiffs, and that it would be a mistake to withdraw the filing because it would cost the parties time and money. Id. ¶28. Allegedly in reliance on these representations, Plaintiffs did not take any action to oppose HIDE Venezuela's application to register the Aristocrat name and trademark in Venezuela and the trademark and trade name registration was granted to HIDE Venezuela. Id. ¶29-30.

After the registration in Venezuela, Plaintiffs requested that the Defendants assign the Aristocrat trademark and trade name to them, but Defendants have never done so. Id. ¶31.

Plaintiffs also allege that HIDE Venezuela asked the Servico Nacional Integrado de Administracion Tributaria of Venezuela to order Venezuelan customs authorities to restrict the import of Plaintiffs' products into Venezuela. Id. ¶32. Additionally, Plaintiffs maintain that Defendants have continually refused to pay them the money ATI is due under the parties' various agreements. Id. ¶34.

Plaintiffs filed suit in this Court (#1) against HIDE Venezuela on August 3, 2007 alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment and requesting declaratory relief.[1] (Compl. (#1) ¶¶24-47). Plaintiffs then moved for a request for international judicial assistance so that they could obtain assistance from the Venezuelan government in serving the complaint upon HIDE in Venezuela. (Plaintiff's Opp'n (#20) 2). The Court granted this motion, and HIDE Venezuela was served with a copy of the summons and complaint on February 12, 2008. (Fountain Decl. (#14) 3). HIDE Venezuela failed to respond to the complaint, and on May 27, 2008, the Clerk of the Court entered default against HIDE Venezuela. (Plaintiff's Opp'n (#20) 2). HIDE Venezuela filed its Motion to Set Aside the default on June 23, 2008, arguing that it was never properly served, and that it had a meritorious defense because the Court lacks subject matter jurisdiction. (Def's Mot. (#19) 1-6). While this motion was still pending, Plaintiffs filed a First Amended Complaint renaming HIDE Venezuela, and adding HIDE Nevada, Randall and Adams. (Am. Compl. (#24) 1).

## II. DISCUSSION

**A. Motion to Set Aside Entry of Judgment**

HIDE Venezuela argues that the entry of default should be set aside because it was never properly served and because it has a meritorious defense. (Def's Mot. (#19) 3-6). HIDE also asks the Court to dismiss the original complaint for lack of subject matter jurisdiction. Id. at 4-5. Plaintiffs argue that HIDE Venezuela was properly served and that there is no good cause to set aside the entry of default. (Plaintiff's Opp'n (#20) 5). Plaintiffs further admit that

---

[1] Plaintiffs' assertion with regard to jurisdiction was based on 28 U.S.C. §1332 (diversity). (Compl. (#1) ¶1). Defendants correctly argued in their Motion to Set Aside that diversity jurisdiction was not present because diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants. See Cheng v. Boeing Co., 708 F.2d 1406, 1412 (9th Cir. 1983).

3

diversity jurisdiction is not present in this case, but they argue that the Court still has federal question jurisdiction. Id. at 6.

According to Rule 55 of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Prior to a default judgment being entered, a default under Rule 55(a) can be set aside by the district court for "good cause." Fed. R. Civ. P. 55(c).

"Absent an abuse of discretion, there is no error in setting aside a default where the judge finds good cause to do so." Mendoza v. Wight Vineyard Mgmt., 783 F.2d 941, 945 (9th Cir. 1986). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." O'Connor v. State of Nev., 27 F.3d 357, 364 (9th Cir. 1994). In general, "[w]here timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside default so that cases may be decided on the merits." Id. In determining whether to set aside a default, the "court should consider whether: (1) the plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and (3) the defendant's culpable conduct led to the default." Id. (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)).

In this matter, several factors must be weighed in the Court's consideration of whether to set aside the default entered against HIDE Venezuela. First, the Court must determine whether Plaintiffs would be prejudiced by an order setting aside the default. "Prejudice exists if circumstances have changed since entry of the default such that [a] plaintiff's ability to litigate its claim is not impaired in some material way or if relevant evidence has become lost or unavailable." Accu-Weather, Inc. v. Reuters Ltd., 779 F.Supp. 801, 802 (M.D. Pa. 1991). Notably, "[d]etriment in the sense that plaintiff will be required to establish the merit of its claim does not constitute prejudice in this context." Id. In this case, Plaintiffs will not be prejudiced by an order setting aside the entry of default. There is no contention by Plaintiffs that evidence has been lost or has become unavailable. In addition, Plaintiffs have not provided any

4

1  evidence that something has occurred since entry of the default which will hinder its ability to
2  litigate the case.  Rather, Plaintiffs will have to establish the merits of their claims against the
3  Defendants.  Additionally, Plaintiffs have essentially waived their opposition to this Motion to
4  Set Aside by filing an amended complaint against the original defendant, among others.  The
5  filing of the amended complaint essentially moots Plaintiffs' opposition to the Motion to Set
6  Aside, as they have implicitly acknowledged that the case against HIDE Venezuela should
7  proceed to the merits.  Furthermore, Plaintiffs conceded during the hearing that it would be
8  appropriate to set aside the default given their amended complaint.

9        Second, the Court must determine if HIDE Venezuela has a meritorious defense.  "A
10 meritorious defense is one which, if proven at trial, will bar plaintiff's recovery."  Id.  "The
11 defendant is not required to prove beyond the shadow of a doubt that it will win at trial, but
12 merely to show that it has a defense to the action which at least has merit on its face."  Id.  In
13 this case, HIDE Venezuela argues that it has a meritorious defense because it performed
14 under the terms of the agreements. (Def's Mot. (#19) 3).  HIDE Venezuela further argues that
15 this Court lacks subject matter jurisdiction because diversity is lacking, and because this case
16 deals with a Venezuelan trademark and does not substantially effect U.S. commerce for
17 jurisdictional purposes. Id. at 4-5.  While the Court will not decide the merits of these defenses
18 here, these defenses at least have merits on their face and, if proven at trial, would bar
19 Plaintiffs' recovery in this matter.  Therefore, the second factor also weighs in favor of setting
20 aside the default.

21       Finally, the Court must determine if HIDE Venezuela's culpable conduct led to the
22 default.  "A defendant's motion to set aside a default should not be granted if the defendant
23 exhibited some degree of culpable conduct in failing to respond to pleadings."  Accu-Weather,
24 Inc., 779 F.Supp. at 804.  "[A] defendant's conduct [is] culpable . . . where there is no
25 explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to
26 respond."  Employee Painters' Trust v. Ethan Enter., Inc., 480 F.3d 993, 1002 (9th Cir. 2007).
27 In this case, HIDE Venezuela claims that it was not properly served with the original summons
28 and complaint, and therefore it did not become aware of the lawsuit until the notice of default

was brought to the correct office location in Venezuela. (Def's Mot. (#19) 2). Given the potential for difficulty and confusion in serving a defendant in a foreign country and HIDE Venezuela's promptness in filing its motion to set aside, this Court finds no evidence of a "devious, deliberate, willful, or bad faith failure to respond." As such, the third factor also weights in favor of granting the motion to set aside.

Based on the foregoing, the Court, in its discretion, will set aside the default entered against HIDE Venezuela. Because Plaintiffs will suffer no prejudice, the case should be determined on its merits.

**B. Motion to Dismiss Amended Complaint**

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In its Motion to Dismiss, HIDE Venezuela argues that this Court lacks subject matter jurisdiction because Plaintiffs' only federal claims are under the Lanham Act, which does not apply to acts which occurred in foreign countries and have no effect on American commerce.[2] (Def's Mot. (#25) 2-3). Defendants further argued at the hearing that Plaintiffs' claims were

---

[2]HIDE Venezuela also argues that Plaintiffs cannot amend their complaint to cure any jurisdictional defects "when the court has no jurisdiction to start with." (Def's Mot. (#25) 2). However, this argument is without merit. Under FRCP 15(a), a party may amend its pleading once as a matter of course before being served with a responsive pleading. Amendment to cure defective jurisdictional allegations is allowed. Metzger v. Hussman, 682 F.Supp. 1109, 1111 (D.Nev. 1988).

6

in essence contract claims, and Plaintiffs were not entitled to relief under the Lanham Act. Plaintiffs argue that this Court does have jurisdiction over the matter because they own a U.S. trademark for the Aristocrat name and design and its infringement in Venezuela has effected American foreign commerce. (Plaintiff's Opp'n (#27) 7).

In its Amended Complaint, Plaintiffs allege two federal claims under the Lanham Act, one for trademark infringement under 15 U.S.C. §1114 and one for unfair competition under 15 U.S.C. §1125(a). (Am. Compl. (#24) 7-8). Plaintiffs allege that this Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a).[3] Id. ¶1. In order to state a claim for relief under the Lanham Act for unfair competition and trademark infringement, the plaintiff must allege: (1) a valid trademark and (2) likelihood of confusion from the defendant's use of the mark. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). The Court finds that Plaintiffs have properly alleged that they have a valid U.S. trademark, and that the Defendants' use of the Aristocrat trademark is likely to cause confusion. (Am. Compl. (#24) ¶¶19, 38, 48). Therefore, the only remaining issue in Defendants' Motion to Dismiss is whether this Court has jurisdiction to apply the Lanham Act extraterritorially.[4]

The purpose of the Lanham Act is to "regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce...to protect persons engaged in such commerce against unfair competition, to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. §1127. In this case, Plaintiffs registered the Aristocrat trademark and trade name with the U.S. Patent and Trademark Office and were thus protected from infringement under the Lanham Act. (Am Compl. (#24) ¶19). In interpreting the jurisdictional scope of the Lanham Act, the Supreme Court has stated that the

---

[3] Under 28 U.S.C. §1338, district courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

[4] Defendants argued at the hearing that Plaintiffs' allegations in support of the Lanham Act claims were insufficient because they were not supported by affidavit. On the contrary, the allegations of a complaint need not be supported by affidavit because the Court accepts as true all material allegations of the complaint. LSO, Ltd., 205 F.3d at 1150.

7

1  Act provides a "broad jurisdictional grant" that extends to "all commerce which may be lawfully
2  regulated by Congress." Steele v. Bulova Watch Co., 344 U.S. 280, 283 (1952). Additionally,
3  the Supreme Court has stated that Congress has the power to prevent unfair trade practices
4  in foreign commerce by citizens of the United States, although some of the acts are done
5  outside the territorial limits of the United States. Id. at 286.

6        The Ninth Circuit has held that the Lanham Act's coverage of foreign activities may by
7  analyzed under the test for extraterritorial application of the federal antitrust laws set forth in
8  Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n, 549 F.2d 597 (9th
9  Cir. 1976). Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1395 (9th Cir. 1985).
10 The Ninth Circuit has identified three criteria that must be satisfied to apply the Lanham Act
11 extraterritorially: first, the alleged violations must create some effect on American foreign
12 commerce; second, the effect must be sufficiently great to present a cognizable injury to
13 plaintiffs under the federal statute; and third, the interests of and links to American foreign
14 commerce must be sufficiently strong in relation to those of other nations to justify an assertion
15 of extraterritorial authority. Id.

16       **1. Effect on American Foreign Commerce**

17       As to the first criterion, the sales of infringing goods in a foreign country may have a
18 sufficient effect on American foreign commerce to invoke Lanham Act jurisdiction. Reebok
19 Int'l Ltd. v. Marnatech Ent., Inc., 970 F.2d 552, 553 (9th Cir. 1991). Plaintiffs allege that
20 Defendants have sold counterfeit gaming machines in Venezuela bearing the Aristocrat
21 trademark. (Am. Compl. (#24) ¶37). Plaintiffs also allege that Defendants' actions have
22 prevented them from importing their gaming machines from the U.S. into Venezuela, and from
23 re-branding any counterfeit machines that are already there, and therefore there is some effect
24 on American foreign commerce. This Court agrees. Accepting the allegations of Plaintiffs'
25 amended complaint as true, the sale of counterfeit Aristocrat machines and the restriction on
26 the importation of U.S. manufactured gaming machines have some effect on American foreign
27 commerce. Therefore the first requirement is satisfied.
28 ///

**2. Cognizable Injury to Plaintiffs under the Federal Statute**

The second criterion is also satisfied given that Defendants' actions have allegedly prevented Plaintiffs from importing, selling, or licensing its gaming machines in Venezuela, and have allegedly produced counterfeit gaming machines bearing the Aristocrat name and marks. The sale and distribution of counterfeit machines in Venezuela would decrease the sales of genuine gaming machines there and decrease Plaintiffs' revenue from sales. These harms are sufficient to present a cognizable injury under the Lanham Act. See Reebok, 970 F.2d at 554-55 (holding sale of counterfeit shoes in Mexico caused injury to American manufacturer that was cognizable under Lanham Act); Star-Kist, 769 F.2d at 1395 (holding sale of canned fish in the Philippines under labels with Plaintiff's trademarks caused injury to Plaintiff that was cognizable under the Lanham Act).

**3. Interests of and Links to American Commerce vs. Those of Other Nations**

The third requirement, that the interests of and links to American foreign commerce be sufficiently strong in relation to those of other nations to justify extraterritorial application of the Lanham Act, involves the balancing of seven relevant factors: (1) the degree of conflict with foreign law or policy, (2) the nationality or allegiance of the parties and the locations and principal places of business of corporations, (3) the extent to which enforcement by either state can be expected to achieve compliance, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is explicit purpose to harm or affect American commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. Reebok, 970 F.2d at 555.

The first factor in the balancing test involves the degree of conflict with foreign law or policy and weighs against this Court's exercise of jurisdiction. Specifically, the Ninth Circuit has held the existence of a conflict with a foreign trademark registration weighs against extraterritorial application of the Lanham Act. Wells Fargo & Co. v. Wells Fargo Express & Co., 556 F.2d 406, 428-29 (9th Cir. 1976). Similarly in this case, the Venezuelan government has already registered the Aristocrat trademark and trade name to HIDE Venezuela, and

therefore Venezuela has the right to adjudicate the use of that trademark within its borders. Because the Aristocrat trademark has already been registered to HIDE in Venezuela and there is a high potential for conflict if American authority were asserted to resolve the dispute over the Venezuelan trademark, the first factor weights against extraterritorial application of the Lanham Act in this case.

The second factor in the balancing test is the nationality or allegiance of the parties and the locations or principal places of business of the involved corporations. One of the plaintiffs, ATI, is a Nevada corporation that is a subsidiary of ATA, an Australian corporation. (Plaintiff's Opp'n (#27) 9). Both of these parties have substantial contacts with the United States. As to the defendants, HIDE, Venezuela is a Venezuela corporation whose principal place of business appears to be Venezuela, HIDE Nevada is allegedly a Nevada corporation, and Adams and Acosta are also allegedly Nevada residents and principals of both HIDE corporations. Id. Because all but one of the parties have significant contacts to the United States, the second factor weighs in favor of extraterritorial application of the Lanham Act.

The third factor, the extent to which enforcement by either state can be expected to achieve compliance, weighs in favor of extraterritorial application. The Ninth Circuit held in Reebok that even where a foreign state could enforce its own or U.S. trademark laws, where "each of the defendants, their principal places of business, and the vast majority of their assets are located in the United States," the United States has the superior ability to enforce. Reebok, 970 F.2d at 557. Additionally, where a U.S. citizen or corporation has "orchestrated the infringing activities," an injunction against the U.S. citizen would be effective. Ocean Garden v. Marktrade Co. Inc., 953 F.2d 500, 504 (9th Cir. 1991). In this case, Plaintiffs allege in their amended complaint that HIDE Nevada is a U.S. corporation, and that Adams and Acosta are both U.S. citizens and have substantial assets located in the United States. (Am. Compl. (#24) ¶¶9-13). They further argue that, because HIDE Nevada, Adams and Acosta directed HIDE's activities, an injunction against Adams and Acosta would be effective to achieve compliance from HIDE Nevada and HIDE Venezuela. (Plaintiff's Opp'n (#27) 9). This Court agrees. Based on the allegations in the amended complaint, HIDE Nevada, Adams and

Acosta orchestrated the infringing activities in question. (Am.Compl. (#24) ¶¶13, 38, 48). Even though HIDE Venezuela could continue infringing activities on its own, the extensive involvement of the U.S. corporation and U.S. citizens indicates that enforcement against them would achieve compliance.

The fourth factor, the relative significance of effects on the United States as compared with those elsewhere, also weighs in favor of this Court's exercise of jurisdiction. Where the alleged infringement results in losses to a U.S. corporation, this factor tips in favor of extraterritorial application. Ocean Garden, 953 F.2d at 504. While arguably there is also some effect on commerce in Venezuela, where the allegedly counterfeit gaming machines have been distributed, the alleged illegal use of the trademarks has affected trade between the U.S. and Venezuela, and has significantly impacted a domestic U.S. corporation. Therefore, the fourth factor also weighs in favor of extraterritorial jurisdiction.

As to the fifth and sixth factors, where there is evidence that a defendant's infringing acts were intentional and the infringement was foreseeable, the Ninth Circuit has found explicit purpose to harm American commerce. See id. In this case, Plaintiffs present some evidence that the Defendants' infringing acts were intentional. Specifically, it alleges that HIDE falsely represented that it would assign the Venezuelan trademark to ATI after the registration, ultimately refused to assign the trademark and directed Venezuelan authorities to restrict the importation of Plaintiffs' products into Venezuela. Each of these allegations indicate that the Defendants intentionally obtained the Venezuelan trademark registration in order to prevent Plaintiffs from importing their gaming machines into Venezuela and profit from using the Aristocrat trademark on counterfeit machines. As such, the fifth and sixth factors also weigh in favor of extraterritorial application of the Lanham Act.

The final factor of the balancing test, the relative importance to the violations charged of conduct within the United States as compared with conduct abroad, does not clearly support either a decision to exercise territorial jurisdiction or to refrain from doing so. In this case, Defendants' infringing actions were allegedly directed from the United States. However, actual consumer sales of any counterfeit products would have occurred only in Venezuela. Because

Plaintiffs' claims are based both on actions that occurred in the United States and Venezuela, it is difficult to determine whether actions in either location were more significant to Plaintiffs' claims than the actions in the other. However, the majority of the other factors clearly weigh in favor of the exercise of extraterritorial jurisdiction. Accepting the allegations in the amended complaint as true, this Court can say that the factors in favor of exercising jurisdiction outweigh the counterbalancing factors, even though this may present some conflict with Venezuelan law. See Reebok, 970 F.2d at 555 (extraterritorial application of Lanham Act appropriate even though parties were involved in trademark and copyright litigation in Mexican court). Because the affirmative requirements under Timberlane have been met, this Court may exercise jurisdiction over Plaintiffs' claims against the Defendants[5] and the Court will deny HIDE Venezuela's Motion to Dismiss.

## III.  CONCLUSION

IT IS HEREBY ORDERED that HIDE Venezuela's Motion to Set Aside Default (#19) is GRANTED.

IT IS FURTHER ORDERED that HIDE Venezuela's Motion to Dismiss Amended Complaint (#25) is DENIED.

DATED: This 10TH  day of February, 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Court also has jurisdiction over Plaintiffs' remaining state law claims under 28 U.S.C. §1367. See Cleary v. News Corp., 30 F.3d 1255, 1257 (9th Cir. 1994).